UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**ADRIAN CLARK**,

    Plaintiff,

v.                                                 Case No. 5:24-CV-00015-WFJ-PRL

**PUBLIX SUPER MARKETS, INC.**,

    Defendant.
_____/

## ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Adrian Clark ("Plaintiff"), in his complaint (Dkt. 1), sues Publix Super Markets, Inc. ("Defendant") for racial discrimination under 42 U.S.C. § 1981. Before the Court is Defendant's motion for summary judgment (Dkt. 21), which Plaintiff opposed (Dkt. 28). After careful consideration of the allegations in Plaintiff's complaint, the submissions of the parties, and the applicable law, the Court grants Defendant's motion.

## BACKGROUND

Adrian Clark ("Clark" or "Plaintiff"), an African American male, settled a previous worker's compensation case and received a settlement sum of around $22,000 on June 21, 2023. Dkt. 21-3 at 16:12–18, 18:25, 98:17–24, 117:14–21; Dkt. 21-6 ¶ 24; Dkt. 21-7 ¶ 29. Plaintiff and his wife, Jessica Clark ("Jessica") (together,

1

the "Clarks"), who is also African American, had been homeless for several weeks prior, living between a hotel, a car, and Plaintiff's mother's home. Dkt. 21-3 at 6:14–15, 12:17–22, 14:23–25, 15:1–8. Although they were able to lease an apartment, before moving in—scheduled for the next day—management required them to pay rent in full and make a security deposit by money order or cashier's check because of their credit, income, and rental history. Dkt. 28-1 at 1; Dkt. 21-3 at 13:23–25, 14:1–8, 41:17–20, 101:5–18, 19:17–25. The total rent for the seven-month lease was $14,028, and the security deposit was $1,804, so they sought orders totaling $15,832. Dkt. 21-3 at 118:3–10; Dkt. 21-3 at 98:17–25.

*Store 1477*

On June 21, 2023, the Clarks traveled to Orlando to pick up the settlement check and cashed it. Dkt. 21-3 at 25:10–13; Dkt. 21-3 at 19:4–8. Plaintiff received money orders from Publix Super Markets, Inc.'s ("Publix" or "Defendant") stores in the past, but none were more than $1,954.00. Dkt. 21-3 at 23:4–25, 24:1–8, 25:15–25. Plaintiff chose Defendant's store number 1477 because it was close to the apartment. Dkt. 21-3 at 23:17–18.

On the way, Jessica called and spoke with Tatiana, a customer service employee. Dkt. 21-3 at 27:4–25, 28:1–3. Jessica asked whether Defendant could fill money orders totaling $15,832, and Tatiana confirmed it could. Dkt. 21-3 at 27:19–22, 28:13–15. Relying on Tatiana's confirmation, the Clarks went to that Publix.

2

Dkt. 21-3 at 13:8–12, 24:24–25, 25:1–18, 26:5–23. Mr. Clark could not imagine that they were wearing anything "pleasant or decent" that day. Dkt. 21-3 at 70:9–16.

The Clarks first approached the counter. Dkt. 35[1] at 14:57:34–49. Then, Jessica walked away. Dkt. 35 at 14:57:55–58. Mr. Clark began conversing with a customer service employee, Taylor Martinelli ("Martinelli"). Dkt. 35 at 14:57:56–14:58:01; Dkt. 21 ¶¶ 9–10. Plaintiff notified Martinelli he was there to obtain the money orders Jessica had called about and showed her the amount needed from his phone. Dkt. 21-3 at 29:1–15; Dkt. 35 at 14:58:24–26; Dkt. 28 at 3.

Martinelli entered the amount on the computer and received a notification box, which popped up automatically and read "over $10,000.00." Dkt. 35 at 14:58:30–35; Dkt. 21-5 ¶ 17. Martinelli needed help proceeding and sought help from Tatiana, who was behind her. Dkt. 21-5 ¶ 42; Dkt. 35 at 14:58:44–14:49:28; Dkt. 21-3 at 7–8. During this time, Plaintiff spoke on his phone while holding a box on the counter containing the cash to fund the money orders. Dkt. 35 at 14:58:52–14:59:39; Dkt. 28 at 18.

Afterwards, Martinelli flagged down Eva Forte ("Forte"), the customer service team leader, for assistance. Dkt. 35 at 15:00:18–15:01:13; Dkt. 21-5 ¶ 42. As

---

[1] Refers to video surveillance file from Defendant's store number 1477, which Defendant submitted with its motion for summary judgment. *See* Dkt. 21-1.

3

Forte assisted, Dkt. 35 at 15:00:18–15:01:13, Jessica approached Plaintiff. Dkt. 35 at 15:01:05–15.

Forte interjected, asking Plaintiff why the money orders were needed. Dkt. 35 at 15:01:16–30; Dkt. 21-4 ¶ 15. Plaintiff responded that they were to pay rent. Dkt. 21-3 at 36:13–23. Forte further questioned why rent was so high. Dkt. 21-4 ¶ 17. Plaintiff responded that they had to pay their seven-month lease in full due to their credit score and loss of income. Dkt. 21-3 at 37:9–11, 41:17–20; Dkt. 28 at 5. Plaintiff reported that he got the money from a recent settlement. Dkt. 21-3 at 36:24–25, 37:1–4. Forte turned to Martinelli. Dkt. 35 at 15:01:31–58. Plaintiff next interjected and asked Forte why she questioned him. Dkt. 21-3 at 38:16–20. Forte responded that the questions were designed to protect Publix. Dkt. 21-5 ¶ 25.

Defendant trained Martinelli and Forte to ask open-ended questions that lead to further questions when conducting money service transactions. Dkt. 21-4 ¶ 5; Dkt. 21-5 ¶ 7. Forte was alerted by Plaintiff's responses to these questions because her previous training indicated that a large single transaction, despite the customer entering "unemployed" as their occupation, was a red flag.[2] Dkt. 21-4 ¶ 21. A single red flag is sufficient for an employee to deny a transaction. Dkt. 21-4 ¶¶ 6–8.

---

[2] First, Plaintiff contests that Forte knew he was unemployed at this point. Dkt. 28 at 5. However, he admits that Forte knew about his lack of income and that he got this money from a settlement. Dkt. 21-3 at 37:9–11, 41:17–20. Second, Plaintiff questions the validity of Forte's suspicion because unemployment and a large transaction is only a red flag for transfers, not orders. Dkt. 28 at 16; Dkt. 21-4 at 30; Dkt. 21-3 at 29:1–15. However, the list provided is not exhaustive. *See* Dkt. 21-4. The policy guide reference sheet also does not make that distinction. Dkt. 21-4 at 127.

4

After that, Forte turned to Martinelli, and Martinelli showed her something on the computer. Dkt. 35 at 15:01:57–15:05:38. Forte turned to Plaintiff briefly before switching her attention back to Martinelli. Dkt. 35 at 15:05:41–49. Tatiana rejoined after assisting several other customers and attempted to call someone on the landline. Dkt. 35 at 15:05:27–53. Tatiana then called on a cell phone and handed it to Forte.[3] Dkt. 35 at 15:06:03–13.

At several points during this initial two-minute phone call between Forte and Benjamin Stanton ("Stanton"), the assistant customer service manager, Martinelli spoke briefly to the Clarks. Dkt. 35 at 15:06:12–15:08:15. Towards the end of the call, Stanton instructed Forte to inform the manager on duty about the transaction

---

Moreover, neither Martinelli nor Forte had seen such a large order, which caused them concern. Dkt. 21-4 ¶ 22; Dkt. 21-5 ¶ 12.

[3] Plaintiff claims that this phone call was directed to Travis Hutchinson ("Hutchinson"), an African American male, and the assistant manager, who approved the money orders at that time, and that Forte later called Stanton to get him to override Hutchinson's approval. Dkt. 28 at 6–8. This version of events is contradicted by the record, so the Court does not accept it for the purposes of ruling on this motion for summary judgment. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). Forte and Martinelli claim that Forte's phone call was directed to Benjamin Stanton ("Stanton"), assistant customer service manager. Dkt. 21-5 ¶ 26; Dkt. 21-4 ¶ 20. Stanton declared that the call was directed toward him, Dkt. 21-9 ¶ 9, and that he then called Hutchinson, Dkt. 21-9 ¶ 12. Hutchinson declared that he only received a call from Stanton and denied the transaction in that call. Dkt. 21-8 ¶¶ 8, 13–14. Stanton declared that he then called Forte back to report this. Dkt. 21-9 ¶ 16. Forte and Martinelli confirm this sequence. Dkt. 21-4 ¶ 26; Dkt. 21-5 ¶¶ 32–33. The surveillance video also accords with this sequence, as Forte was on the initial call for approximately two minutes, and this was the only extensive call in the surveillance video. Dkt. 35 at 15:06:12–15:08:16. Forte later exited view and was gone for approximately two minutes, Dkt. 35 at 15:09:18–15:11:22, during which time she received the call from Stanton, Dkt. 21-4 ¶¶ 23–26; Dkt. 21-5 ¶¶ 32–33. When Forte re-entered view and spoke again to the Clarks, Jessica's demeanor changed. Dkt. 35 at 15:11:46–49. Plaintiff's deposition testimony is also consistent with this sequence—he recalled that customer service tried and struggled to get hold of Hutchinson at first, Dkt. 21-3 at 31:24–25, 32:1–14, but he could not recall whether the phone call at this time was to Hutchinson, Dkt. 21-3 at 87:11–13.

request. Dkt. 21-9 at ¶ 11. After the call ended, Martinelli handed Plaintiff a notepad and pen; he wrote his social security number and returned it. Dkt. 35 at 15:06:16–33; Dkt. 21-3 at 43:15–17. Plaintiff also indicated he was unemployed. Dkt. 21-3 at 43:21–23. Martinelli continued to work and conversed occasionally with the Clarks. Dkt. 35 at 15:08:30–15:09:14.

At some point, Forte grabbed her belongings and walked away. Dkt. 35 at 15:09:18–23. Per Stanton's instructions, Forte located Christopher Bender ("Bender"), the deli manager, and the only manager on duty, and informed him about the requested money orders. Dkt. 21-4 ¶¶ 24–25. After speaking to Forte, Stanton called Travis Hutchinson ("Hutchinson"), an African American male, and the assistant manager, who chose to deny the money orders. Dkt. 21-9 ¶ 12; Dkt. 21-8 ¶¶ 8, 13–14. Race was not discussed during any calls. Dkt. 21-4 ¶ 36; Dkt. 21-8 ¶ 22; Dkt. 21-9 ¶ 19. The discussion only concerned the amount of the money orders, that Plaintiff required them to pay rent, and Plaintiff's income. Dkt. 21-4 ¶ 22. Hutchinson denied the transaction by focusing on Plaintiff's lack of income and the large amount of the money orders. Dkt. 21-8 ¶ 23. After speaking to Hutchinson, Stanton called Forte again while she was away from the customer service counter and instructed her to deny the transaction. Dkt. 21-4 ¶¶ 26–28; Dkt. 21-9 ¶ 16.

During this time, Martinelli continued speaking to the Clarks. Dkt. 35 at 15:09:23–15:11:19. When Forte reentered about two minutes after leaving, she first

6

approached Martinelli. Dkt. 35 at 15:11:19–22. Forte then spoke to the Clarks. Dkt. 35 at 15:11:22–46. Jessica's demeanor changed, and her husband had to ask her "to calm down and not to make a scene." Dkt. 35 at 15:11:46–49; Dkt. 28 at 9. According to Plaintiff, Forte stated, "[W]e don't feel comfortable assisting you people today."[4] Dkt. 21-3 at 47:1–3. Forte declares that she only stated that the store did not feel comfortable completing the money orders and denies any discriminatory comments. Dkt. 21-4 ¶¶ 28, 36–37. Martinelli accords Forte's declaration. Dkt. 21-5 ¶ 41. After this, the Clarks conversed with Forte for another minute and a half. Dkt. 35 at 15:11:50–15:13:25. Forte walked away. Dkt. 35 at 15:13:25–29.

Bender then entered and engaged the Clarks. Dkt. 21 ¶ 38; Dkt. 35 at 15:13:41–46. The Clarks spoke to him for about five minutes. Dkt. 35 at 15:13:47–15:18:20. Eventually, Bender asked the Clarks to leave, which they did. Dkt. 21-3 at 58:11–21; Dkt. 21-4 ¶ 35; Dkt. 21-5 ¶ 40.

*Store 1289*

Although the Clarks did not receive money orders at Defendant's store 1477, they secured the orders at a second Ocala store of Defendant's, numbered 1289, later that same day. Dkt. 21 ¶ 70; Dkt. 21-6 ¶ 25; Dkt. 21-7 ¶¶ 31–32; Dkt. 21-3 at 82:12–

---

[4] Forte declares that she only stated that the store did not feel comfortable completing the money orders and denies any discriminatory comments. Dkt. 21-4 ¶¶ 28, 36–37. Martinelli accords Forte's declaration. Dkt. 21-5 ¶ 41. These declarations are consistent with Plaintiff's recollection if "you people" was not used in a discriminatory sense. However, without deciding that yet, the Court views this evidence in the light most favorable to the non-moving party by assuming that Forte did say "you people." *Anthony v. Georgia*, 69 F.4th 796, 804 (11th Cir. 2023) (citations omitted).

7

15. The process was the same. Dkt. 21-3 at 139:11–13. Plaintiff presented the second store with more information: a bank receipt, a settlement folder, and his lease. Dkt. 21-3 at 135:25, 136:1–9, 67:8–11, 139:4–10.

## *Procedural History*

In turn, Plaintiff brought this action against Defendant for intentional racial discrimination under 42 U.S.C. § 1981. Dkt. 1. Defendant denied this charge and raised several defenses. Dkt. 8. Defendant now moves for summary judgment, arguing that Plaintiff cannot prove intentional racial discrimination. Dkt. 21 at 17–24.

The Court interprets Plaintiff's motion to strike, Dkt. 25, as his first response, seemingly arguing that (1) Forte's use of "you people," *see supra* note 3, referred to Plaintiff's race (2) Bender, not Hutchinson, was the decisionmaker, and (3) Forte's discomfort and inability to articulate a reason for the denial shows pretext. Dkt. 24–29. In his second response, Dkt. 28, Plaintiff appears to argue that (4) Defendant incorrectly portrayed him as an "angry, loud, and rude black man," (5) he cannot be blamed for his wife's behavior *ex ante* Defendant's denial to fulfill the money orders, and (6) Defendant has a history of crafting false narratives to avoid liability. Dkt. 28 at 27–30.

Defendant replies, arguing that (1) Plaintiff fails to show but-for causation, (2) Plaintiff's discrimination claim is unfounded because Hutchinson was unaware

of Plaintiff's race, (3) the phrase "you people" is insufficient to prove discrimination directly, (4) Plaintiff presents no comparators, and no evidence indicates employees ever discussed or considered race, and (5) Defendant's employees had legitimate, non-discriminatory reasons to refuse to process the money orders. Dkt. 30 at 1–6. The Court grants Defendant's motion for summary judgment.

## LEGAL STANDARD

"Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Anthony v. Georgia*, 69 F.4th 796, 804 (11th Cir. 2023) (citing Fed. R. Civ. P. 56(a)). In deciding a summary judgment motion, "courts must view the evidence in the light most favorable to the non-movant." *Anthony*, 69 F.4th at 804 (citations omitted). When a plaintiff proceeds pro se, courts must liberally construe their pleadings. *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2018). However, they must conform to procedural rules, and the Court does not have a "license to act as de facto counsel." *United States v. Padgett*, 917 F.3d 1312, 1317 (11th Cir. 2019).

## DISCUSSION

The Civil Rights Act of 1866, as amended, provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . ." 42 U.S.C. § 1981(a). This right is "protected against impairment by nongovernmental discrimination . . . ." *Id.* § 1981(c).

To prevail on a Section 1981 claim, a plaintiff must prove that "but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020). The elements include "(1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the [racial] discrimination [caused loss of a right to enjoy] one or more of the activities [protected by] the statute." *Kinnon v. Arcoub, Gopman & Assocs.*, 490 F.3d 886, 891 (11th Cir. 2007) (quotations omitted) (citations omitted); *see Comcast Corp.*, 589 U.S. at 341.

Intentional racial discrimination is the *sine qua non* of a Section 1981 claim. *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 388 (1982). Legal standards are borrowed from the Title VII context. *Ferrill v. Parker Grp.*, 168 F.3d 468, 472 (11th Cir. 1999) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989)). A plaintiff may evidence intentional racial discrimination (1) directly, (2) circumstantially, or (3) through pattern and practice. *See Rioux v. City of Atl.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citations omitted), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

Plaintiff does not make any allegations concerning statistical evidence of a discriminatory pattern and practice, so the Court only considers his allegations through the lenses of direct and circumstantial evidence. *See Banks v. Cypress Chase Condo. Ass'n B, Inc.*, 616 F. Supp. 3d 1316, 1320 (S.D. Fla. 2022).

10

## I. Direct Evidence of Intentional Racial Discrimination

To qualify as direct, the evidence must show "the existence of [racial discrimination] without inference or presumption." *Ossman v. Meredith Corp.*, 82 F.4th 1007, 1015 (11th Cir. 2023) (quotations omitted) (quoting *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1156 (11th Cir. 2020)). This is a "rigorous standard," and the Eleventh Circuit characterizes "only the most blatant remarks" as direct. *Id.*

Plaintiff argues that Forte's use of "you people" is direct evidence. Dkt. 25 at 24–26; Dkt. 21-3 at 47:1–3. In *EEOC v. Alton Packaging Corp.*, 901 F.2d 920 (11th Cir. 1990), the Eleventh Circuit found that the phrase "you people" was the kind of "stray remark" contemplated by Justice O'Connor in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring), *superseded on other grounds by statute* Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1074, *as recognized in Comcast Corp.*, 589 U.S. at 337, that is insufficient standing alone. 901 F.2d at 923–924; *see also Harris v. Bath & Body Works, LLC*, No. 3:22-CV-23351, 2023 WL 6976910, at *5 (N.D. Fla. Sept. 18, 2023) ("[T]he phrase 'you people' is not . . . a racial epithet."), *report and recommendation adopted*, 2023 WL 6977795 (N.D. Fla. Oct. 23, 2023).

When the intent behind the phrase is ambiguous, it is not direct evidence. *See Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) ("Evidence . . . that is subject to more than one interpretation . . . does not constitute direct

11

evidence.") (citations omitted); *West v. AM/NS Calvert*, 350 F. Supp. 3d 1227, 1244–45 (S.D. Ala. 2018) (collecting cases where the context of the term "you people" was ambiguous); *Miller v. Thomas Jefferson Univ. Hosp.*, 565 F. App'x 88, 93 (3d Cir. 2014) (holding that a single use of "you people" did not prove discrimination).

Assuming Forte used "you people" towards Plaintiff, Dkt. 21-3 at 47:1–3, and ignoring that she was not the decisionmaker, *see infra*, it is not clear that she was invoking Plaintiff's race as opposed to, for example, Plaintiff and his wife as a group (i.e., "you two"). *See Harris*, 2023 WL 6976910, at *6. Therefore, Forte's use of "you people" does not qualify as direct evidence of discrimination. Plaintiff does not point to any other instances directly evidencing intentional racial discrimination.

## II.  Circumstantial Evidence of Intentional Racial Discrimination

For Section 1981 claims based on circumstantial evidence, the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies. *Lewis v. City of Union City*, 918 F.3d 1213, 1220 n.5 (11th Cir. 2019) (en banc). A plaintiff must first point to comparators of a different race who were "similarly situated in all material respects." *Id.* at 1229; *see Allen v. CLP Corp.*, 460 F. App'x 845, 847–48 (11th Cir. 2012). Plaintiff presents none.[5]

---

[5] First, Plaintiff's contention that if he and his wife were "an older white couple," they would have received the money orders as requested, Dkt. 21-3 at 56:15–25, 57:1–5, is a conclusory statement that the Court does not accept at this stage, *see Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). That statement does not serve as a valid comparator. *Lewis v. City of Union City*, 918 F.3d 1213, 1220 n.5 (11th Cir. 2019). Second, Plaintiff's receipt of the money orders from a second store is also not a valid comparator. Although the training, policies, and processes at each

However, a plaintiff survives summary judgment if he presents "a convincing mosaic." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (citations omitted). The key inquiry, following the Rule 56 standard, is whether "the record, viewed in the light most favorable to the plaintiff, present[s] . . . evidence that would allow a jury to infer intentional discrimination by the decisionmaker[.]" *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 951 (11th Cir. 2023) (Newsom, J., concurring) (quotations omitted) (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)); *Wilson v. CSX Transp., Inc.*, No. 24-11127, 2025 WL 964568, at *6 (11th Cir. Mar. 31, 2025) (citations omitted).

Here, Plaintiff fails to present a convincing mosaic. *See Lewis*, 934 F.3d at 1185; *Tatum v. Jasper Water Works and Sewer Bd., Inc.*, No. 22-13805, 2023 WL 3720850, at *2 n.4 (11th Cir. 2023). African American male, Hutchinson was the decisionmaker. Dkt. 21-8 ¶ 23; *see Chambers v. Walt Disney World Co.*, 132 F. Supp. 2d 1356, 1364 (M.D. Fla. 2001) (restating that the "decisionmaker" does not merely supply information or recommend but makes the decision challenged) (citations omitted). Hutchinson did not know Plaintiff's race, Dkt. 21-8 ¶ 15, and decided based on his training, which indicated that the large amount combined with

---

store were consistent, the Plaintiff's race did not change. Moreover, he was not similarly situated because he presented more information concerning the money orders to the second store, Dkt. 21-3 at 135:25, 136:1–9, 67:8–11, 139:4–10, and the store employee he alleged discriminated against him, was not present. Dkt. 28 at 24; *Lewis*, 918 F.3d at 1229.

13

Plaintiff's lack of income raised a red flag, Dkt. 21-8 ¶ 23. *See Poer v. Jefferson Cnnty Comm'n*, 100 F.4th 1325, 1339–40 (11th Cir. 2024) (holding that convincing mosaic not shown where employee's racist comments could not be tied to decisionmakers and legitimate, non-discriminatory reasons were proffered for the challenged decision); *see also Harris*, 2023 WL 6976910, at *7–9 (holding similarly where store clerk misunderstood or failed to correctly implement store policy and used the phrase "you people" ambiguously).

Plaintiff's evidence is insufficient to show intentional racial discrimination. Plaintiff presented to the first store in attire that he described as neither "pleasant" nor "decent." Dkt. 21-3 at 70:9–16. He had a large amount of cash, unprecedented for this store. Dkt. 21-4 ¶ 22; Dkt. 21-5 ¶ 12. And he had little of the documentary backup that he presented in the second store. Dkt. 21-3 at 135:25, 136:1–9, 67:8–11, 139:4–10; *see Lopez*, 676 F.3d at 1235 (11th Cir. 2012) ("As this Court has explained, [Section] 1981 is not a general civility code."). The Defendant did provide the money orders requested, later that day. Dkt. 21-6 ¶ 25; Dkt. 21-7 ¶¶ 31–32. Because Plaintiff has not put forth evidence from which a reasonable jury could conclude that intentional racial discrimination was a but-for cause of the denial of the money orders he requested, *Comcast Corp.*, 589 U.S. at 341, the Court grants summary judgment for Defendant.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Defendant's Motion for Summary Judgment (Dkt. 21) is **GRANTED**.

(2) The Clerk is **DIRECTED** to enter final judgment in favor of Defendant, **TERMINATE** any pending motions and deadlines, and **CLOSE** the case.

**DONE AND ORDERED** at Tampa, Florida, on April 17, 2025.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record